**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ARMANDO SANTANDER,

Petitioner,

vs.

TODD BLANCHE, *et al.*,

Respondents.

Case No.: 2:26-cv-01659-GMN-EJY

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Armando Santander's First Amended Petition for Writ of Habeas Corpus, (ECF No. 9). Federal Respondents Michael Bernacke, Todd Blanche, Todd Lyons, Markwayne Mullin, and Kerri Ann Quihuis filed a Response, (ECF No. 11), to which Petitioner filed a Reply, (ECF No. 12). Also pending before the Court is Petitioner's Motion for Temporary Restraining Order, (ECF No. 16). Federal Respondents filed a Response, (ECF No. 17), to which Petitioner filed a Reply, (ECF No. 18).

For the reasons discussed below, the Court GRANTS the First Amended Petition, DENIES as moot the Motion for Temporary Restraining Order, and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner is a native and citizen of Cuba. (First. Am. Pet. 4:11, ECF No. 9); (*see also* I-213 at 1, Ex. 1 to First. Am. Pet., ECF No. 9-1). He fled Cuba in 1994, spent several months in processing at Guantanamo Bay, and was released into the United States in 1995. (First. Am. Pet. 4:13–16). In 1999, Petitioner was convicted of several state crimes. (*Id.* 4:17–18). While serving his sentence, he was placed in removal proceedings and ordered removed to Cuba on August 23, 2000. (*Id.* 4:17–20); (*see also* I-213 at 3, Ex. 1 to First. Am. Pet.). After being released from state custody, Petitioner was transferred to immigration custody, but immigration

officials determined they could not effectuate his removal to Cuba and released him on an Order of Supervision (OSUP) on August 23, 2002. (First Am. Pet. 4:20–5:3); (*see also* I-213 at 3, Ex. 1 to First. Am. Pet.). Neither Petitioner nor Respondents know exactly how long Petitioner was in immigration custody before his release in 2002, but Petitioner estimates that his detention lasted approximately four months. (First. Am. Pet. 4:20–5:8). In the following 24 years, Immigration and Customs Enforcement ("ICE") made no further attempts to remove Petitioner, and he complied with the terms of his OSUP. (*Id.* 5:9–11).

Petitioner was arrested for driving under the influence on May 17, 2026, and transferred to ICE custody two days later. (*Id.* 5:15–16); (*see also* I-213 at 2, Ex. 1 to First Am. Pet.). That same day, his OSUP was revoked, (Not. Revoc. Rel., Ex. 1 to First. Am. Pet., ECF No. 91-1), and he was issued a Notice of Removal informing him that ICE intended to remove him to Mexico. (Not. Removal, Ex. 1 to First. Am. Pet., ECF No. 91-1).

## II. LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

///

///

**B. Statutory Detention Scheme**

When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an IJ. 8 U.S.C. § 1229a. Removal proceedings determine not only whether an individual may be removed from the United States but also to where they may be removed. In the first instance, the noncitizen is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the noncitizen does not do so, the IJ will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).

Meanwhile, the noncitizen is also entitled to seek various protections, including asylum, statutory withholding of removal, and Convention Against Torture ("CAT") protections. 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary. *See e.g.*, 8 U.S.C. § 1158; 8 C.F.R § 208.2. Others are mandatory, meaning that protection must be given if the conditions are met. Withholding of removal is a mandatory form of protection preventing deportation to the country or countries where an IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). CAT protection is a mandatory protection against deportation to a country where the IJ finds that the individual is likely to be tortured. *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024).

## III. DISCUSSION

Petitioner alleges that he is entitled to habeas relief because (1) his detention violates his Fifth Amendment right to due process and the Immigration and Nationality Act ("INA") because his removal is not reasonably foreseeable as required by *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) ICE's failure to comply with its own regulations concerning re-detention of

individuals on Orders of Supervision violates the Administrative Procedure Act ("APA") and Petitioner's Fifth Amendment due process right; and (3) Petitioner's detention under ICE's policy of third-country removals violates the APA and his Fifth Amendment due process rights. (*See generally* First Am. Pet.). The Court begins by addressing Petitioner's arguments under the Fifth Amendment.

**A. Petitioner's Detention Violates the Fifth Amendment**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by the Department of Homeland Security ("DHS") that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to

effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Courts interpreting *Zadvydas* have held that "the six-month period does not reset when the government detains [a noncitizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases); *see also Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and redetaining them."). In *Doan v. Blanche*, No. 2:26-CV-00473-GMN-BNW, 2026 WL 949037, at *3 (D. Nev. Apr. 8, 2026), the Court adopted this cumulative principle and applies it here as well.

Respondents do not address Petitioner's assertion that he was detained in immigration custody for approximately four months prior to his release in 2002. (*See* First Am. Pet. 4:20–5:8). Adding together the four-month period of detention in 2002 and the five-month period of re-detention since May 19, 2026, Petitioner's detention has long since surpassed the six-month

period of presumptive reasonableness. Because the six-month period has passed, the Court must determine whether Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether Respondents rebut that showing.

**1. Petitioner's Initial Burden**

Petitioner argues that his removal is not reasonably foreseeable under *Zadvydas*. He puts forth evidence to support an initial finding that there is no significant likelihood of removal in the reasonably foreseeable future.

First, it appears extremely unlikely that Petitioner will be removed to Cuba in the reasonably foreseeable future. Petitioner asserts that "Cuba generally doesn't accept noncitizens with final removal orders." (First. Am. Pet. 8:6). Nothing in the record suggests to the Court that Petitioner's case is an exception; indeed, nothing in the record suggests that Respondents ever attempted to remove Petitioner to Cuba after his release in 2002. Respondents' inability to effectuate removal to Cuba in the 26 years since he was issued a final order of removal further supports Petitioner's claim that removal is not significantly likely in the reasonably foreseeable future. *See, e.g.*, *Doan v. Blanche*, No. 2:26-cv-00473, 2026 WL 949037, at *3 (D. Nev. Apr. 8, 2026) (reaching the same conclusion based on a 35-year period since the removal order became final).

Second, it appears unlikely that Petitioner will be removed to Mexico in the reasonably foreseeable future. According to Petitioner, "Respondents have not produced a plan for removal" to Mexico. (First. Am. Pet. 8:8). He also notes that he has not yet been given a constitutionally mandated opportunity to present fear-based claims before an Immigration Judge, which would further delay his removal to Mexico. (*Id.* 8:6–13). In addition, Plaintiff asserts that he does not consent to removal to Mexico, (*id.* 6:4–5), and the Notice of Removal indicates that he declined or refused to sign. (Not. Removal, Ex. 1 to First Am. Pet.). Courts in

this circuit and other circuits have also found that removal to Mexico is unlikely where the petitioner does not consent. *See, e.g.*, *Suarez-Ramirez v. Mattos*, No. 2:25-cv-02369-MMD-EJY, 2026 WL 115020, at *3 (D. Nev. Jan. 15, 2026); *Pena-Gil v. Lyons*, No. 25-CV-03268-PAB-NRN, 2025 WL 3268333, at *3 (D. Colo. Nov. 24, 2025). In sum, Petitioner's allegations give the Court good reason to believe that he is not likely to be removed to Mexico in the reasonably foreseeable future.

**2. Respondents' Burden**

The burden thus shifts to Respondents to produce evidence sufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 701.

Although Respondents claim that ICE "scheduled" Petitioner's removal to Mexico on May 19, (Fed. Resp. 2:2), the Notice of Removal includes no date or schedule. (*See* Not. Removal, Ex. 1 to First Am. Pet.). And Respondents do not respond at all to Petitioner's arguments about the likelihood of imminent removal to Mexico. Instead, Respondents merely claim that he has been held in custody while "being processed for removal to Mexico." (Fed. Resp. 5:13). Respondents submit no evidence that DHS has attempted to coordinate a transfer to Mexico—*e.g.*, travel documents or communications with Mexican officials—or even that they have begun the process in that time. *See, e.g.*, *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *4 (D. Nev. Apr. 22, 2026) (listing types of evidence that respondents could produce to meet their burden). In addition, Respondents do not explain how ICE plans to remove Petitioner to Mexico despite his unwillingness to go there. *See, e.g.*, *Celis v. Bondi*, No. 2:26-cv-00079-GMN-DJA, 2026 WL 710961, at *3 (D. Nev. Mar. 13, 2026) (noting that the petitioner provides evidence that Mexico only accepts individuals from other countries who "willingly" go to Mexico). Courts in this circuit have regularly refused to find respondents' burden met where respondents have offered little more than generalizations regarding the likelihood that removal will occur, which is still more than Respondents allege

here. *See, e.g.*, *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025).

Accordingly, Respondents fail to rebut Petitioner's showing. Petitioner is entitled to habeas relief under the Fifth Amendment.

**B. Petitioner Is Entitled to Due Process Before Removal to a Third Country**

Petitioner contends that ICE's policy to remove noncitizens to a third country with no notice or opportunity to seek fear-based protection constitutes arbitrary and capricious agency action that violates the APA, 5 U.S.C. § 706. (First Am. Pet. 12:22–13:6). Petitioner also avers that he has a due process right to meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country. (*Id.* 11:22–12:21).

"Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (mem.).

Respondents argue that Petitioner "certainly could have" raised a fear-based claim when he was provided with the Notice of Removal. (Resp. 4:9–11). According to Respondents, ICE does not have an "affirmative obligation to inquire as to his potential fear and provide him with an interview to express that." (*Id.* 4:19–22). Respondents also argue that Petitioner should have claimed his fear in the Amended Petition. (*Id.* 4:22–24).

Respondents mischaracterize ICE's burden in third-country removals. Courts in this circuit have repeatedly found that the government must undertake rigorous procedures to afford a noncitizen their full due process rights before ordering him removed to a third country. *See Perez Canet*, 2026 WL 1091763, at *4 (collecting cases). First, the noncitizen must receive "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019). Second, the noncitizen must be asked whether he fears persecution or harm upon removal to the third country, and his response must be memorialized in a writing signed by the noncitizen. *Id.* "If the noncitizen expresses a fear of persecution or harm, DHS must inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts." *Id.* Finally, the government must give the noncitizen "adequate time to prepare and file a motion to reopen in order to challenge DHS's country designation and/or apply for asylum, withholding, and relief under the CAT." *Id.* at 1020; *see also A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025) (concluding the petitioner was likely to succeed on the merits because "due process requires Petitioner be provided an opportunity to have his fear-based claims for removal to [a third country] considered by an immigration judge").

Accordingly, the Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports

him to Mexico or another third country. To permit Petitioner to fully exercise that due process right, DHS must comply with the procedures described above.[1]

**C. Scope of Relief**

First, Petitioner requests that he be released immediately. (First Am. Pet. 13:15–18). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted.[2] *See Zadvydas*, 533 U.S. at 699–700.

---

[1] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the stated policy violates the APA.

[2] 8 U.S.C. § 1231(a)(3) provides:

> If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—
>
> (A) to appear before an immigration officer periodically for identification;
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

Second, Petitioner requests that the Court prohibit Respondents from removing him to a third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. (First Am. Pet. 14:6–10). For the reasons discussed above, the Court grants this requested relief.

More recently, Petitioner filed a Motion for Temporary Restraining Order, (ECF No. 16). Because that Motion asserts the same grounds for relief and requests the same remedy as the Amended Petition, the Court denies it as moot.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition, (ECF No. 9), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order, (ECF No. 16), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Petitioner must be released from detention no later than **October 26, 2026,** between the hours of **12:00 P.M. and 3:00 P.M.** under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window. Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

**IT IS FURTHER ORDERED** that the parties must file a **JOINT** Status Report by **October 27, 2026,** to certify compliance with the Court's order, including the date and time of Petitioner's release.

**IT IS FURTHER ORDERED** that Respondents are prohibited from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that Counsel for Respondents is directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is kindly directed to enter judgment in favor of Petitioner.

**DATED** this 22 day of October, 2026.

________________________________
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT